UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| LEONARDO DRISDEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18 CV 50 MTS |
| JASON LEWIS, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Leonardo Drisdel's Petition under 28 U.S.C.

§ 2254 for writ of habeas corpus.[1] For the following reasons, Petitioner's § 2254 petition is denied.

### I.      Procedural History

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston,

Missouri. In June of 2005, he was charged in the Circuit Court of St. Louis City with murder in the

first degree and armed criminal action. On May 18, 2012, a jury found Petitioner guilty on both

counts. Petitioner was sentenced to life imprisonment without parole for the murder count and a

concurrent term of 150 years' imprisonment on the armed criminal action count. Petitioner's

convictions and sentences were affirmed on direct appeal.[2] *See State v. Drisdel*, 417 S.W.3d 773

---

[1] Because Drisdel filed an amended petition, his original petition for writ of habeas corpus, Doc. [1], is denied as moot.
[2] Drisdel raised twelve grounds of trial court error on direct appeal. He alleged that the trial court erred in: (1) refusing to allow him to present the defense of not guilty by reason of insanity; (2) overruling his objections under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the striking of four African-American venire members; (3) submitting a verdict director that did not conform to the Missouri Approved Instructions; (4) allowing the State to examine the venire panel during voir dire concerning whether they could impose a mandatory sentence of life without parole; (5) not allowing him to

(Mo. App. 2014).  Petitioner thereafter filed a timely pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 in the circuit court. An amended motion was subsequently filed by appointed counsel.[3] The circuit court denied the amended motion after an evidentiary hearing. The Missouri Court of Appeals affirmed the circuit court's judgment. *See Drisdel v. State*, 509 S.W.3d 860 (Mo. App. 2017). The appellate court issued its mandate on March 3, 2017.[4] Petitioner filed a timely[5] petition for writ of habeas corpus on March 5, 2018, pursuant to 28 USC § 2254. Petitioner sought and was granted extensions of time until July 23, 2018, when the amended petition, Doc. [11], was filed.

Petitioner asserts five grounds for relief. Grounds one through four were addressed by the Missouri Court of Appeals. Because the state appellate court's decisions were not unreasonable applications of clearly established law and not based on unreasonable determinations of fact,

---

submit a self-defense instruction; (6) denying his motion for mistrial after the State commented during closing argument that the jury would not receive a self-defense instruction; (7) entering judgment because it did not have jurisdiction to sentence him to first-degree murder because he did not waive jury sentencing; (8) refusing to submit a jury instruction on the lesser-included offense of involuntary manslaughter; (9) submitting jury verdict directors charging the manner of death as "striking and asphyxiating" when the indictment only identified "striking" as the cause of death; (10) submitting a jury instruction that voluntary intoxication does not relieve a defendant of criminal responsibility because there was no evidence that he had consumed alcohol; (11) sustaining the State's objection to Detective Leopold testifying that Petitioner made an out-of-court statement that he acted in self-defense; and (12) failed to grant his motion for judgment of acquittal because the evidence was insufficient to conviction him of first degree murder and armed criminal action.

[3]  In his amended motion, Petitioner raised two grounds for relief, alleging that trial counsel was ineffective for (1) advising Petitioner not to speak with Dr. Richard Scott about the events on the day of the murder, and (2) advising Petitioner not to testify. On appeal, post-conviction counsel only raised the issue that trial counsel was deficient for advising Petitioner not to testify.

[4] Petitioner did not seek transfer to the Supreme Court of Missouri.

[5]  Respondent asserts a statute of limitations defense. 28 U.S.C. § 2244(d)(1) sets a one-year statute of limitations period for petitioners seeking federal habeas relief from state court judgments. *Finch v. Miller*, 491 F.3d 424, 426 (8th Cir. 2007). This one-year statute of limitations begins to run on the latest of four alternative dates. *Jihad v. Hvass*, 267 F.3d 803, 804 (8th Cir. 2001). Relevant here is the provision stating that a habeas petitioner has one year from the date his judgment becomes final to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1)(A). Under Missouri state-court procedures, post-conviction relief proceedings are not final until the issuance of the mandate. *Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006). The court's mandate issued March 3, 2017. Petitioner filed his petition for writ of habeas corpus on Monday, March 5, 2018 (March 3, 2018 would have been a Saturday), the final day of the one-year statute of limitations (when the last day of a filing period is on a weekend or legal holiday, the period continues until the end of the next day that is not a Saturday, Sunday, or legal holiday day. Fed. R. Crim 45(a)(1)(B). The petition is, therefore, timely.

2

Petitioner's petition for writ of habeas corpus will be denied as to those grounds. Ground five is denied as well because it was not raised during Petitioner's state proceedings and is procedurally defaulted.

## II.     Factual Background

On the evening of June 4, 2005, Petitioner abruptly left his home between 8:30 p.m. and 9:00 p.m., telling his wife he would return in ten minutes. Doc. [12-2] at 371. At 12:15 a.m., Petitioner returned home. *Id*. His wife met him in the unlit hallway leading to their bedroom. *Id.* at 373. At that time, she noticed he was "nervous and jittery." *Id.* at 374. In the light of the bathroom, she saw that "his face, his arms, his hands…his shirt and his pants" were covered in blood. *Id.* As he cleaned himself, she noticed a cut on his finger and small bump on his forehead *Id.* at 376, 383. He then finished rinsing, wiped the bathroom down with a washcloth, toilet paper, and ammonia, washed his soiled clothes in the washing machine, shaved off his facial hair, changed clothes, and departed. *Id.* at 377-79. Petitioner's wife called the police. *Id.* at 384. Police officers located Petitioner a few hours later near a bus stop close to his house. *Id*. at 385, 422. They noticed a cut on his finger, but did not observe any other injuries when they took Petitioner into custody. *Id.* at 424, 426. Subsequently, police officers located the body of the victim, a young woman, in her apartment. *Id.* at 446-47. Signs of a struggle were evident at the scene. *Id.* at 537. The victim's body had suffered multiple injuries consistent with repeated beating, biting, smothering, and cutting. *Id.* at 515-26. The coroner determined her cause of death to be from head trauma and asphyxia. *Id.* at 536.

At trial, Petitioner did not testify and his statements made to police were not entered into evidence. The State, however, offered blood and DNA evidence found at the crime scene, bite wounds matching Petitioner's teeth, and the victim's blood found in Petitioner's bathroom and on the clothes he wore the night of the murder. *Id.* at 638, 650. Petitioner was found guilty of murder

in the first degree and armed criminal action, and was sentenced to life without parole or probation as to the murder count and 150 years of imprisonment as to the armed criminal action count.

### III.   Legal Standard

When a claim has been adjudicated on the merits in state-court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), though such relief is "limited and deferential." *Lonholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, 28 U.S.C. § 2254(d), habeas relief is only permissible if the state court's determination:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2)

A state court's decision is "contrary to" clearly established Federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458, 4647 (8th Cir. 2004) (quoting *Early v. Packer*, 547 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." *Id*.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *see Payton,* 544 U.S. at 141 and *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 406. "Clearly established" Supreme Court law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." *Carter v. Kemna*, 255 F.3d 589, 592 (8th Cir. 2001) (quoting *Williams*, 529 U.S. at 410-11 (2000)). "[I]t is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). "An 'unreasonable application' is different from an incorrect or erroneous application; a prisoner must establish that a state court's adjudication was not only wrong, but also objectively unreasonable, such that 'fair-minded jurists' could not disagree about the proper resolution." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); § 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. *Id.*

## IV.    Discussion

Petitioner asserts three claims of trial error and two claims of ineffective assistance of trial counsel.

### A.  <u>Trial Court Error Grounds</u>

**Ground One: Petitioner claims he was denied his rights to due process of law, to remain silent, to be free from self-incrimination, and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court did not allow him to present a defense of not guilty by reason of mental disease or defect because he did not discuss the facts of the crime with the State's mental health expert.**

Petitioner gave notice to the trial court that he planned to rely on the defense of not guilty by reason of mental disease or defect. He procured an expert, Dr. Steven Stromsdorfer, to examine him and prepare a report. Doc. [12-5] at 24. In Dr. Stromsdorfer's initial report he *did not* find that Petitioner suffered from a mental disease or defect. *Id*. A copy of that report was provided to the State on September 8, 2008. *Id*. The State was later provided with a "supplemental report" in which Dr. Stromsdorfer found that Petitioner *did* suffer from a mental disease or defect which may provide him with a defense. *Id*. (emphasis added). The State objected to the findings of the initial and "supplemental" reports and requested an evaluation be done by another psychiatrist or psychologist, as allowed under Mo. Rev. Stat. § 552.020.6 and § 552.030 RSMo. *Id*. at 25, 26.  The trial court ordered another psychological examination of Petitioner. During an examination by Dr. Richard Scott, Petitioner refused to answer questions regarding the day of and immediately after the alleged offenses. The State then sought and obtained an order from the trial court to compel Petitioner to answer offense-specific questions during a subsequent evaluation by Dr. Scott. Doc. [11] at 9. Dr. Scott testified at the hearing on the motion to compel that he needed Petitioner's explanation of the events surrounding the crime to assess Petitioner's criminal responsibility. Doc. [12-4] at 31. The

trial court ordered another exam by Dr. Scott. The order directed Petitioner to participate in the criminal responsibility portion of the evaluation by providing his account of the alleged offense to the examiner, Doc. [12-4] at 33, and warned Petitioner that "[f]ailure by the defendant to comply with this court's order will result in further sanctions by the court including but not limited to the absolute bar by the defendant of the defense of mental disease or defect." Doc. [12-4] at 32. Petitioner declined to discuss the events surrounding the crimes he was charged with and was not allowed to present the defense of mental disease or defect.

On direct appeal, the Missouri Court of Appeals found that, "[b]ecause Petitioner placed his mental condition at issue, he voluntarily subjected himself to a mental examination by the State's expert. Therefore, any statements required of the [Petitioner] by the expert during the examination cannot be characterized as "compelled," and [did] not violate [Petitioner's] rights to remain silent or to counsel,'" citing *State v. Worthington*, 8 S.W.3d 83, 90-92 (Mo. banc 1999). Doc. [12-9] (*see* also *Worthington v. Roper*, 619 F. Supp. 2d 661, 710-11 (E.D. Mo. 2009).   The Missouri Court of Appeals in this case, as well as the Supreme Court of Missouri in *Worthington*, cited to *Estelle v. Smith*, 451 U.S. 454 (1981). In *Estelle*, the trial court ordered, *sua sponte*, that the accused be evaluated by a state psychiatrist to determine if he was able to stand trial. *Id*. at 456-57. The defendant did not receive a *Miranda* warning prior to or at the examination, and his lawyer was not present. It was not clear if defense counsel even knew the exam had been ordered. Following the defendant's murder conviction, the state psychologist testified at the penalty hearing, relying on the defendant's own statements, regarding the defendant's future dangerousness. Based on the testimony, the jury recommended a death sentence. The Supreme Court vacated the sentence, holding that a "criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence may not be compelled to respond to a psychiatrist if his

statements can be used against him at a capital sentencing proceeding." *Id*. at 468. The Supreme Court in *Estelle*, however, also explained that when a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. *Id*. at 465. "Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist."[6] *Id*. at 465-67.

Petitioner claims his situation is different because he declined to answer offense-specific questions and that responding to that line of questioning would have harmed his defense. This concern was addressed by the Missouri Court of Appeals, noting in its opinion that, "the plain language of § 552.030 RSMo. (Cum. Supp. 2011), explicitly prohibits the State from using any information obtained during such examination to incriminate a defendant. *See, e.g.*, *State v. Thompson*, 985 S.W.2d 779, 786 (Mo. banc 1999) ("[S]tatements made to a psychiatric examiner 'shall be admissible . . . only on the issue of his mental condition,' and defendant is entitled to a limiting instruction.") (quoting *State v. Copeland*, 928 S.W.2d 828, 839 (Mo. banc 1999), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888-889 (Mo. banc 2008))." Doc. [12-9] at 4.

The circumstances in this case, as well as those in *Worthington*, are not exactly analogous to the facts in *Estelle*. However, on direct appeal, the Missouri Court of Appeals

---

[6] (Citing *United States v. Cohen*, 530 F.2d 43, 47–48 (5th Cir. 1976), *cert. denied*, 429 U.S. 855 (1976); *Karstetter v. Cardwell*, 526 F.2d 1144, 1145 (9th Cir. 1975); *United States v. Bohle*, 445 F.2d 54, 66–67 (7th Cir. 1971); *United States v. Weiser*, 428 F.2d 932, 936 (2nd Cir. 1969), cert. denied, 402 U.S. 949 (1971); *United States v. Albright*, 388 F.2d 719, 724–725 (4th Cir. 1968); and *Pope v. United States*, 372 F.2d 710, 720–721 (8th Cir. 1967) (en banc), *vacated and remanded on other grounds*, 392 U.S. 651 (1968).

correctly noted the differences between the circumstances of Petitioner's case and those in *Estelle*. Because Petitioner placed his mental health at issue, he voluntarily subjected himself to a mental examination by the State's expert. Requiring Petitioner to answer offense-specific questions by an expert to determine Petitioner's criminal responsibility did not violate his rights to remain silent, to be free from self-incrimination, and a fair trial. The trial court was within its discretion to deny Petitioner's request to present a defense of not guilty by reason of mental disease or defect when he refused to answer offense-specific questions necessary for an expert to make a professional determination regarding his criminal responsibility.[7]  This Court finds that the Missouri Court of Appeal's decision in this regard was neither contrary to, nor involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts. Petitioner's claim in Ground One is denied.

**Ground Two: Petitioner was denied his right to an impartial jury and equal protection of the law under the Sixth and Fourteenth Amendments to the United States Constitution when the trial court overruled his *Batson* challenge to the preemptory strikes of four jurors.**

Petitioner contends the trial court erred in overruling his objections under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's peremptory strikes of four African Americans from the venire panel. The Equal Protection Clause of the United States Constitution prohibits parties from using a peremptory challenge to strike a potential juror on the basis of race. *Id*. at 89. In *Batson*, the Supreme Court described a three-step, burden-shifting process for challenging a peremptory strike on this basis. *Id*. at 96-98. "First, the opponent of the peremptory challenge must establish a prima

---

[7] "The trial court has considerable discretion in ruling upon requests to rely upon mental disease or defect as a defense." *State v. Isa*, 850 S.W.2d 876, 886 (Mo. banc 1993).

facie showing that the challenge is discriminatory." *United States v. Wolk,* 337 F.3d 997, 1007 (8th Cir. 2003). Second, "[t]he proponent of the peremptory challenge must then articulate a race-neutral explanation for the challenge." *Id.* Third, "[i]f a race-neutral explanation is offered, the challenger must show that the explanation is a pretext for discrimination." *Id.*

At trial, the State moved to strike jurors Lovings, Beavers, Scott, Bang, Bantle, Edgerson, and the alternate, Guelker. Doc. [12-2] at 335. Petitioner raised *Batson* challenges with respect to the proposed strikes of venire panel members Lovings, Beavers, Scott, and Edgerson because they are all African Americans and "under the circumstances, these strikes are not racially neutral. They are motivated by race." *Id*. at 336. "[T]he record should reflect that the defendant in this case is of African American descent. The record should also reflect that the alleged victim in this case is Caucasian." *Id*. at 336. The State offered the following race-neutral explanations for each strike: the first panel member was struck because she had an outstanding warrant for her arrest, *id*. at 336; the second because his stepson was in prison for assault, he was the victim of an unreported assault, and at one point he indicated he was not sure he could follow the court's instruction regarding voluntary intoxication, *id*. at 343; and the last two panelists were struck due to the State's concern they might be biased because of their work experiences (one panelist worked for a criminal defense firm, *id.* at 344, and the other was a former city investigator, *id*. at 345). The trial court found the aforementioned reasons to be racially neutral and denied the motions.

The Missouri Court of Appeals affirmed the trial court, finding that Petitioner had failed to show that the State's race-neutral explanations were pretextual and as such failed to meet his burden of proof to establish the existence of purposeful discrimination. Doc. [12-9] at 6. The court found that there were no similarly situated white venire members who were not also struck from the panel and that the State's explanations for each strike were arguably credible. *Id*. at 7 (citing *United States*

*v. Granados*, 596 F.3d 970, 975 (8th Cir. 2010) (holding outstanding warrant for arrest of potential juror is valid, race-neutral reason for exercising a peremptory strike); *State v. Clayton*, 995 S.W.2d 468, 476 (Mo. banc 1999) (finding a juror's equivocation about his ability to follow instructions is an acceptable non-pretextual reason for strike); *State v. Brown*, 998 S.W.2d 531, 544 (Mo. banc 1999) (recognizing peremptory strike of a venireperson because of employment to be acceptable); *State v. Johnson*, 207 S.W.3d 24, 37 (Mo. banc 2006) ("Employment is a valid race-neutral basis for striking a prospective juror.")). *Id*. Ultimately, the court determined that Petitioner failed to show the prosecutor's race-neutral explanations were pretextual and thereby failed to carry his burden of proof to establish the existence of purposeful discrimination and to explain how or why the State's explanations for each strike were pretextual given the totality of the circumstances. *Id*. at 7-8. This Court finds that the Missouri Court of Appeals decision in this regard was neither contrary to, nor involved an unreasonable application of clearly established Federal law, or resulted in a decision that was based on an unreasonable determination of the facts. Petitioner's claim in Ground Two is denied.

**Ground Three**: **Petitioner was denied his rights to due process of law, a fundamentally fair trial, and proof beyond a reasonable doubt under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court overruled his motion for judgment of acquittal because the evidence was insufficient to demonstrate that he was guilty of first degree murder and armed criminal action.**

In reviewing the evidence to determine if it was insufficient to support the jury's verdicts of first-degree murder and armed criminal action, the Court must decide if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The facts are reviewed *de novo* in the light most favorable to the prosecution, allowing for reasonable inferences from those facts. *Id.*

First, Petitioner argues the State failed to prove beyond a reasonable doubt that he acted with deliberation when he killed the victim, an element necessary to prove first-degree murder. *See* Mo. Rev. Stat. § 565.020.1. "Deliberation" is defined as "cool reflection for any length of time no matter how brief." Mo. Rev. Stat. § 565.002(3). When viewed in the light most favorable to the prosecution, the evidence at trial showed Defendant attacked the victim with a knife and with his bare hands. He repeatedly beat her face and head, asphyxiated her, cut her forehead, and bit flesh from her nose, cheek, and wrist. Doc. [12-2] at 515-26. Such evidence is more than sufficient to prove deliberation. *See Glass*, 136 S.W.3d at 514 ("Evidence that [the victim] suffered multiple wounds and the nature of her death – asphyxiation after a struggle  absent evidence of any provocation by the victim – strengthens the jury's inference that [the defendant] deliberated.").

Second, Petitioner claims that the evidence was insufficient to sustain his conviction for armed criminal action because the definitive cause of death did not directly result from the use of a dangerous instrument or deadly weapon. Armed criminal action only requires the jury to find the defendant committed a felony with the "knowing assistance or aid of a dangerous instrument" not that injury or death resulted from such use. Mo. Rev. Stat. § 571.015.1; MAI-CR 3d 332.02. The evidence outlined above was sufficient to support the conclusion that Petitioner attacked the victim with a knife, which is armed criminal action. *See State v. Ware*, 326 S.W.3d 512, 517 (Mo. Ct. App. 2010) (quoting *State v. Jackson*, 865 S.W.2d 678, 680 (Mo. Ct. App. 1993)).

This Court finds that the Missouri Court of Appeals decision in this regard was neither contrary to, nor involved an unreasonable application of clearly established Federal law, or resulted

in a decision that was based on an unreasonable determination of the facts. Petitioner's claim in Ground Three is denied.

### B. <u>Ineffective Assistance of Counsel Grounds</u>

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id.* at 689. Thus, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and the "burden to 'show that counsel's performance was deficient' rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013) (quoting *Strickland*, 466 U.S. at 690). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted). To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective—[courts] need not first make a determination regarding deficiency." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013). "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v.*

*Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is 'reasonably likely' that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696. The *Strickland* prejudice standard is less demanding than a more-probable-than-not standard, but the difference is 'slight and matters only in the rarest case.' *Harrington v. Richter*, 562 U.S. 86, 112 (2011). To satisfy *Strickland*, the likelihood of a different result must be 'substantial, not just conceivable.' *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id*. at 785. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

*Williams*, 695 F.3d at 831. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

**Ground Four: Petitioner was denied his rights to due process and effective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when trial counsel improperly advised him not to testify.**

Petitioner was charged with first degree murder for the victim's death. The victim's body had suffered multiple injuries consistent with beating, biting, smothering, and cutting. Doc. [12-2] at 517-21, 523, 548. The medical examiner determined her cause of death to be from head trauma and asphyxia. *Id.* at 536. Also, Petitioner did not deny arguing with the victim just before her death, but instead claimed he acted in self-defense. Doc. [12-11] at 44-47. Petitioner chose not to testify on his own behalf, relying in part on trial counsel's advice. He was ultimately found guilty by a jury of first-degree murder and was sentenced to life without parole. During Petitioner's post-conviction hearing in state court, both he and his trial counsel testified as to why

he chose not to take the stand. Trial counsel testified that, prior to trial, they[8] had practiced with Petitioner, and both were concerned he might not be a good witness for himself, as he might open himself up to impeachment, including "[prior incidences … of domestic abuse including attack's on women; one of which … he shot his ex-wife." Doc. [12-11] at 13-17, 20.   Further, trial counsel reiterated that, "despite the fact that [Petitioner's] testimony may add something to the self-defense argument, we felt that in the totality of the circumstances it had the potential of causing far more damage than it would help." *Id*. at 17. Additionally, trial counsel had concerns about Petitioner's substance abuse history and that his voluntary intoxication prior to the attack might severely complicate his self-defense theory. *Id* at 7-8, 14. Instead, trial counsel aimed to argue "imperfect self-defense" by cross-examining the State's witnesses and attacking the State's forensic evidence. *Id.* at 11-12, 16-17. Petitioner testified he was aware of the potential negatives described by trial counsel if he decided to testify, and after discussing these pros and cons he decided not to testify. *Id.* at 67, 68.

The state post-conviction court found trial counsel's advice to Petitioner not to testify was reasonable, finding that "[Petitioner] made his own knowing and intelligent decision not to testify at trial, based upon sound trial strategy used by defense counsel." Doc. [12-12] at 45.[9] Trial counsel discussed the possibility of Petitioner testifying and even practiced testimony with him. *Id*. After observation of the Petitioner's practice testimony, and after reviewing the pros and cons of Petitioner testifying, trial counsel "reached a well-reasoned and experienced opinion that [Petitioner] ought not testify at trial." *Id.*  Trial counsel based their decision upon their belief that Petitioner would not be a good witness, that his testimony and subsequent cross-examination

---

[8] Petitioner had two trial counsel: Talmadge Newton and Chet Pleban.
[9] The post-conviction court's decision was affirmed by the Missouri Court of Appeals, Eastern District, ED103894 Memorandum 2017. Doc. [12-16].

would likely help the State more than the defense, and that his history of violence against women would likely be exposed to the jury. *Id*. Further, the state post-conviction court found that trial counsel was "highly credible" and their testimony to be truthful and reliable. *Id*. at 43. Petitioner's testimony, meanwhile, was found "to completely lack credibility" regarding his version of the events. *Id*.

Petitioner has not established that he is entitled to relief under the "double deferential" standard that applies to ineffective assistance claims. *Williams*, 695 F.3d at 831 (8th Cir. 2012). First, he has failed to meet his burden to show that trial counsel's strategic decision to not have him testify was unreasonable. Second, he hasn't shown that the decision of the Missouri courts was contrary to or an unreasonable application of *Strickland*, or that the courts unreasonably applied *Strickland* to the facts of this case. Therefore, Petitioner was not denied his rights to due process and effective assistance of counsel when trial counsel advised Drisdel not to testify. Ground four is denied.

**Ground Five: Petitioner was denied effective assistance of counsel, due process of the law, and his right to a speedy trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when the trial counsel failed to move to dismiss the charges on the basis of a violation of Petitioner's right to speedy trial.**

Petitioner claims in his amended petition that trial counsel was ineffective for not moving to dismiss the criminal case against him on speedy trial grounds. Doc. [11] at 17-19. Petitioner acknowledges that this issue was not raised in state court and claims the failure to do so was because of the ineffective assistance of his post-conviction counsel. *Id*. at 19.

Missouri "prevent[s] individuals from pursuing claims of ineffective assistance of trial counsel on direct appeal," requiring instead that they make such claims in a post-conviction, "initial-review collateral proceeding." *Franklin v. Hawley*, 879 F.3d 307, 312 (8th Cir. 2018). Claims that

post-conviction counsel was ineffective are "categorically unreviewable" in Missouri. *Barton v. State*, 486 S.W.3d 332, 336 (Mo. banc 2016). Nevertheless, a state prisoner can seek federal review of a claim for habeas relief, even though it has been procedurally defaulted, by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, under *Coleman*, "ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse factual or procedural default." *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009) (quoting *Coleman*, 501 U.S. at 750). A narrow exception has since been created in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012) where: "(1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Kemp v. Kelley*, 924 F.3d 489, 499 (8th Cir. 2019) (quoting *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014)); *see Martinez*, 566 U.S. at 14.

Here, the state collateral review proceeding was the initial review proceeding with respect to Petitioner's ineffective assistance of trial counsel claim. His claim was not raised in the state collateral review proceeding, and as such, was procedurally defaulted. In order to overcome the procedural default Petitioner must also show that: (1) his claim of ineffective assistance of trial counsel was "substantial," and (2) the "cause" for the default was the ineffective assistance of post-conviction counsel during the initial-review collateral proceeding. *Kemp*, 924 F.3d at 499. To show that Petitioner has presented a substantial claim of ineffective assistance of trial counsel, he must demonstrate that his claim has some merit. *Martinez,* 566 U.S. at 14.

Petitioner claims that trial counsel was ineffective due to their failure to assert his right to a speedy trial and that state post-conviction counsel was ineffective for not asserting an ineffective assistance of trial counsel claim with regard to trial counsel's failure to assert the speedy trial claim. It is Petitioner's burden to show his claim - that trial counsel was ineffective for not asserting a speedy trial claim - is substantial by demonstrating his claim has some merit. Both Missouri and the federal courts use the same four-factor test to review speedy trial claims. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cummings v. State*, 535 S.W.3d 410, 417-21 (Mo. Ct. App. 2017). These factors are the length of the delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker*, 407 U.S. at 417.

Provided below is the entirety of the supporting facts provided in Petitioner's amended petition, Doc. [11], regarding Ground Five:

> Supporting facts: The State filed its criminal complaint against Drisdel on June 6, 2005. Drisdel was denied bond. Drisdel then sat in the St. Louis City Justice for almost seven years until he went to trial on May 15, 2012. A review of the docket indicates a number of continuances that were requested by the trial court but it is unclear why the case was delayed for almost seven years. Although trial counsel did depose a number of witnesses, the facts of the case were not complex and in no way warranted such an unconstitutional delay. During the time Drisdel was in pre-trial custody he was given anti-psychotic drugs that affected his reasoning and decision-making. Drisdel did not request trial counsel to file a motion for speedy trial because he was unaware that one even existed. Trial counsel did not advise Drisdel that he had a right to a speedy trial. Given the [sic] Drisdel was heavily medicated throughout his pretrial custody, he relied solely upon his attorney.

Petitioner has provided the Court with nothing more than conclusory allegations in his amended petition to demonstrate that his claim has merit. "In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to

establish a constitutional claim. Mere conclusory allegations will not suffice." *Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987). *See also Henney v. Berghuis*, No. 1:06-CV-149, 2006 WL 1008864, at *4 (W.D. Mich. Apr. 14, 2006); *Champs v. Roy*, No. Civ. 14-995, 2015 WL 691416, at *7 (D. Minn. Feb. 18, 2015). Petitioner fails to substantiate his conclusory allegations with any facts whatsoever from the record. Therefore, he has not met his burden under the *Martinez* exception to show that his claim of ineffective assistance of trial counsel (for not setting forth a speedy trial claim) has merit under the *Martinez* standard. On this basis, Ground Five will be denied.

Despite Petitioner's conclusory allegations and failure to provide sufficient facts to establish his claim has merit (and thus a substantial claim), this Court's review of the record indicates that even if Petitioner did demonstrate he had a substantial claim, he would not have been able to show that the cause for the default was the ineffective assistance of post-conviction counsel. That is because it would not be objectively reasonable to fault post-conviction counsel for claiming trial counsel was ineffective for not bringing a speedy trial claim, when the record shows that the bulk of trial delay related to evaluation of Petitioner's mental competency to stand trial and his refusal to cooperate in the process.

Petitioner's criminal trial record indicates that an approximate seven-year period elapsed between the time Petitioner was charged and his jury trial commenced. The docket sheet is replete with notices, motions, evaluations, hearings, status conferences, briefing, orders, and continuances almost exclusively relating to Petitioner's mental competency and his refusal to cooperate in the process.[10]

---

[10] It is also noteworthy that the docket sheet does not reflect that Petitioner ever objected to any of the continuances in the case and most were either requested by him or were joint requests with the State.

Petitioner was charged with murder in the first degree and armed criminal action in July of 2005. Doc. [12-4] at 21. Petitioner then requested and was granted two continuances. *Id*. at 18. His case was set for initial appearance on August 15, 2005. *Id*. The docket sheet then stated, "August 15, 2005, Hearing Scheduled Continued by Defendant 11/17/05." *Id*. On November 7, 2005, the docket sheet stated, "Hearing Scheduled Continued by Defendant 03/6/2006." *Id*. On March 6, 2006, Petitioner filed a notice of intent to rely on the defense of mental disease or defect. Doc. [12-4] at 24. He procured an expert, Dr. Steven Stromsdorfer, to examine him and prepare a report. Doc. [12-5] at 24. An order is issued by the trial court on March 22, 2006, stating, "Pretrial conference was held … at Defts. request caused is moved off the 8-14-06 trial docket and scheduled for a pretrial conference on 6-13-06." Doc. [12-4] at 18. On August 8, 2006, the docket sheet stated, "Court grants at parties consent a continuance for further status updates to Tuesday October 17, 2006." *Id*. at 17. On October 17, 2006, the docket sheet indicates that Petitioner had not yet received a report from his own mental health expert, and the case was continued to December 13, 2006. *Id*. at 16. On December 13, 2006, the trial court assigned the case to a trial division and set it for a jury trial on March 5, 2007. *Id*. The docket sheet then reflects status conferences with the parties, a notice to take deposition, a joint request for continuance, court orders continuing the case, and a motion for withdrawal of counsel. *Id*. at 15-16. On April 17, 2008, Petitioner reasserted his intent to rely on the defense of mental disease or defect. *Id*. On September 8, 2008, Dr. Stromsdorfer provided his initial report wherein he *did not* find that Petitioner suffered from a mental disease or defect. Doc. [12-4] at 28. (emphasis added). On November 20, 2008 and December 17, 2008, the parties filed joint continuances, and in January of 2009 a jury trial was scheduled for October 5, 2009. Doc. [12-4] at 14. On October 1, 2009, Petitioner filed a motion to dismiss the indictment *Id*. Soon thereafter, Petitioner's counsel informed the state that Dr. Stromsdorfer had developed a revised diagnosis.

Doc. [12-3] at 5. On October 5, 2009, the State filed a motion to exclude Petitioner's psychiatric evidence due to the revised diagnosis. *Id.* at 13. The trial court issued an order on October 6, 2009, stating, "Cause continued for the defendant, due to defendant's endorsed psychiatrist having arrived at a revised diagnosis … defense psychiatrist Dr. Steve Stromsdorfer, to prepare and provide a written report of his diagnosis no later than November 16, 2009." *Id.* Dr. Stromdorfer then provided a "supplemental report" finding that Petitioner *did suffer* from a mental disease or defect which may provide him with a defense. Doc. [12-4] at 28. On November 23, 2009, the State objected to the findings of the initial and "supplemental" reports and requests an evaluation be done by another psychiatrist or psychologist, as allowed under Mo. Rev. Stat. § 552.020.6 and § 552.030 *Id.* at 29. The trial court sustained the state's motion and ordered another mental examination of Petitioner. Doc. [12-4] at 13. In January of 2010, the case was set for a status conference on March 30, 2010. *Id.* After a few more joint continuances, Dr. Richard Scott filed his report and findings with the trial court in April of 2010. Doc. [12-4] at 33. Petitioner refused to answer questions regarding the day of and immediately after the alleged offenses, causing Dr. Scott to defer on the issue of criminal responsibility. Doc. [12-3] at 6. On March 23, 2011, the parties appeared for a status conference. Doc. [12-4] at 10. At some point, the State made an oral motion to the trial court to compel Petitioner to answer offense-specific questions during a subsequent evaluation by Dr. Scott. Doc. [12-3] at 4. The trial court set an evidentiary hearing for April 20, 2011. Doc. [12-4] at 10. On April 20, 2011, a hearing was held on the motion to compel, and the trial court requested that the parties prepare memorandums on the issue of Petitioner's psychological state. *Id.* Dr. Scott testified at the hearing that he was unable to determine Petitioner's criminal responsibility without Petitioner's cooperation in discussing the events and circumstances at the time of the alleged conduct. Doc. [12-4] at 31. On July 14, 2011, after briefing was filed, the trial court issued an order granting the State's motion to

compel, and ordering Petitioner to participate in the criminal responsibility portion of another evaluation by providing his account of the alleged offenses to Dr. Scott. Doc. [12-4] at 30, 33. The trial court warned Petitioner that "[f]ailure by the defendant to comply with this court's order will result in further sanctions by the court including but not limited to the absolute bar by the defendant of the defense of mental disease or defect." Doc. [12-4] at 32. Dr. Scott attempted to interview Petitioner a second time on August 19, 2011. Doc. [12-4] at 33. On August 25, 2011, Dr. Scott provided the court with a letter indicating that Petitioner declined to participate in the evaluation. Doc. [12-4]. After more hearings and pretrial preparation, the case proceeded to trial in May of 2012. Doc. [12-4] at 8. Petitioner was not allowed to present the defense of mental disease or defect.

The delay in this case was almost exclusively due to Petitioner's desire to assert the defense of mental disease or defect. As illustrated above, multiple continuances, evaluations, reports, status conferences, hearings, motions, briefing, and orders solely concerned Petitioner's competency to stand trial. In essence, Petitioner claims he should have been allowed to assert a mental disease or defect defense, yet the time expended to explore his mental competency, including a lot of time directly related to his refusal to cooperate in the process, should now be weighed in favor of his ineffective assistance of counsel claims.

Different reasons for delay are to be assigned different weights when examining a speedy trial claim. *Barker*, 407 U.S. at 531. "Delays attributable to the defendant weigh heavily against the defendant." *Cummings v. State*, 535 S.W.3d 410, 418 (Mo. Ct. App. 2017) (quoting *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. Ct. App. 2010)). This includes time spent for mental examinations, at least where the accused himself places his mental fitness to proceed to stand trial at issue. *State v. Smith*, 389 S.W.3d 194 (Mo. Ct. App. 2012). Here, the length of delay tips heavily against Petitioner.  Petitioner claims in his amended petition that "[a] review of the docket indicates

a number of continuances that were requested by the trial court but it is unclear why the case was delayed for almost seven years." Doc. [11]. The record outlined above makes it abundantly clear that Petitioner's assertion of a mental disease or defect claim, and his refusal to cooperate in the process to explore it was the predominant cause of trial delay. "'It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.'" *Reynolds v. Norris*, 86 F.3d 796, 799-800 (8th Cir. 1996). Due to the conflicting reports from Petitioner's expert and Petitioner's unwillingness to cooperate in the subsequent court-ordered examination, the trial court was given little choice other than to proceed with the exploration into Petitioner's mental competency, or risk causing a mentally incompetent person to stand trial in violation of his due process rights.

Because Petitioner's conclusory allegations and failure to provide sufficient facts to establish his claim has merit (and thus a substantial claim), Ground Five is denied. Even if Petitioner had demonstrated a substantial claim, he would not have been able to show that the cause for the default was the ineffective assistance of post-conviction counsel. It would not have been objectively reasonable to fault post-conviction counsel for claiming trial counsel was ineffective for not bringing a speedy trial claim when the record showed that the bulk of trial delay was related to evaluation of Petitioner's mental competency to stand trial and his refusal to cooperate in the process.

Accordingly,

IT IS HEREBY ORDERED that the petition of Leonardo Drisdel for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is DENIED as moot.

IT IS FURTHER ORDERED that the amended petition of Leonardo Drisdel for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [11], is DENIED.

IT IS FINALLY ORDERED that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

Dated this 31st day of March, 2021

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE